[No. 9412. In Bank.—November 30, 1887.]

JACOB KAMM, RESPONDENT, v. BANK OF CALIFORNIA, APPELLANT.

EVIDENCE — COMPLAINT VERIFIED BY ATTORNEY IN FACT. — The action was brought against the defendant, a banking corporation, to recover certain moneys alleged to have been remitted to it by the plaintiff for investment, the proceeds of which it had collected and appropriated to its own use. On the trial, the defendant offered in evidence the complaint in a pending action, which had been previously commenced in the name of the plaintiff by his attorney in fact, and was being prosecuted with his knowledge and consent, to recover the same moneys from a third person. The complaint was not signed or verified by the plaintiff, but was verified by his attorney in fact. *Held*, that the complaint was admissible in evidence against the plaintiff of the fact that the prior action had been brought, and of its nature.

ID. — COMPLAINT HOW FAR EVIDENCE AGAINST PLAINTIFF. — Where an action is brought in the name of and for the benefit of a party by his duly authorized attorney in fact, and is being prosecuted with his knowledge and consent, he is presumed to know these facts and to have assented thereto; and the complaint therein, although not signed or verified by him, is evidence against him of the fact of suit brought and of the nature of the action.

AMENDMENT — NONSUIT — DISCRETION. — Pending a motion for a nonsuit, it is within the discretion of the court to permit the plaintiff to amend his complaint so as to conform to the evidence.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*F. G. Newlands,* and *S. M. Wilson,* for Appellant.

*McAllister & Bergin,* and *Mastick, Belcher & Mastick,* for Respondent.

SEARLS, C. J. — This is an action to recover from the defendant, the Bank of California (a corporation), the sum of $20,810, interest, and costs of suit.

The cause was tried by the court (a jury having been waived), written findings filed, and judgment entered thereon in favor of plaintiff for the sum of $32,051.60, and costs.

Defendant appeals from the judgment, and from an order denying a new trial.

The action was commenced on the twenty-third day of September, 1876, and was tried upon the issues made by the fourth amended complaint, filed April 27, 1883, and the answer thereto, up to and pending the trial, when the complaint was again amended.

Jacob Kamm, the plaintiff, during all the times hereinafter mentioned, was a resident of Portland, Oregon.

The Bank of California was organized as a corporation on the 4th of July, 1864, on which day its directors held their first meeting, and on the 5th of July, 1864, the bank was opened for business.

Before that time, there existed the banking firm of Donohoe, Ralston & Co., composed of Joseph A. Donohoe, William C. Ralston, Eugene Kelly, and Ralph S. Fretz. With that firm the plaintiff did business, such as depositing moneys, drawing checks upon it, and other banking business. That firm dissolved about the latter part of June, 1864, by dividing into two parts, — one of

which was Donohoe and Kelly, and the other Fretz and Ralston. The latter, under that firm name, did business for the short interval between the dissolution of the firm of Donohoe, Ralston & Co., and the 5th of July, 1864, when the Bank of California commenced business.

Whilst the firm of Donohoe, Ralston & Co. was doing business, and in the early part of the year 1864, a project was formed by William C. Ralston, the plaintiff Jacob Kamm, R. S. Fretz, and a number of others, to form, incorporate, and inaugurate a new bank, to which Ralston and Fretz were to carry as much of the business of Donohoe, Ralston & Co. as they could. Mr. Ralston was very active in procuring associates, and in obtaining possession and control of a large amount of notes, bills, and commercial paper, in which the funds of the new associates were from time to time invested, for the purpose of using them ultimately in payment of subscriptions to the stock of the new bank when formed, and as a nucleus upon which to start business. This matter was kept secret from Donohoe and Kelly, who were not taken into the new project; and much of the business that would have naturally flowed into the current affairs of Donohoe, Ralston & Co. was diverted by Ralston from its natural channel, and kept in such condition and control by him as would enable him to throw it at once into the new bank when it should be organized. In this, Mr. Kamm was co-operating with Mr. Ralston, as will be seen by the correspondence between the parties, — Kamm living at the time in Portland, Oregon, and only coming to San Francisco from time to time.

Kamm, it would seem, had concluded to take stock in the new bank to the extent of about seventy-five thousand dollars; and, following out the plan adopted by Ralston, was to forward that amount to Ralston, to be invested in commercial paper; so that when he should

be called upon to pay up his subscription to the new bank he would be enabled to pay in the commercial paper instead of cash, and that commercial paper would then become the property of the bank. Thus its funds, to that extent, would, on its opening for business, be already invested, filling the important part of a beginning and nucleus, as already stated, for its general banking business.

Kamm already had a general deposit account with Donohoe, Ralston & Co., and was remitting and drawing. For the purposes of the new project, he commenced to remit on the 11th of April, 1864, and continued up to the 25th of May, 1864, at which time he had remitted sixty-nine thousand five hundred dollars. By adding to this the sum of five thousand five hundred dollars, drawn from his general deposit account with Donohoe, Ralston & Co., he made up the aggregate amount of seventy-five thousand dollars named in the complaint. Though these amounts came nominally to Donohoe, Ralston & Co. in the beginning, for the ostensible purpose of investments, they were immediately taken charge of by Ralston, with the express knowledge and consent of Kamm and Donohoe, Ralston & Co., and invested on loans and in commercial paper, with the secret intent of Kamm and Ralston to transfer such investments and commercial paper to the new bank when formed, in payment of Kamm's subscription. In all of these matters Ralston managed and controlled the funds and investments, and most of the time had them in his own name, and secretly gave information to and corresponded with Kamm, constantly imposing on the latter the most profound secrecy. In this manner the seventy-five thousand dollars in cash and checks came to the possession and control of Ralston, and was by him invested, and the investments from time to time changed.

When the Bank of California went into business, or

shortly after, fifty thousand dollars of the amount, it is admitted, went to pay up his subscription to the stock, which had been subscribed for him by Ralston, at his, Kamm's, special direction. Of the remaining twenty-five thousand dollars, Kamm admits payments to him of four thousand one hundred and ninety dollars, but still claims as unpaid to him the sum of twenty thousand eight hundred and ten dollars.

This amount, with interest, he demands from defendant, upon the theory that it was his agent for these investments, and as such agent received the seventy-five thousand dollars in commercial paper and securities, and had failed to account to him for so much thereof as is involved in this action.

The important question of fact presented for determination at the trial was, whether the Bank of California received the money and securities involved in the action as the agent of plaintiff, or whether Ralston retained custody thereof as such agent, and became liable therefor.

The testimony was voluminous and conflicting, and while the court below found in favor of the plaintiff, grave doubts were expressed concerning the propriety of the conclusion reached.

We have stated these facts, to the better understanding of a question raised at the trial, upon certain testimony offered by the defendant, and excluded by the court, the exclusion of which is assigned as error, viz.:—

Defendant proved that in September, 1876, plaintiff executed a power of attorney to Joseph M. French, whereby the latter was authorized and empowered for and on behalf of the former to collect and receive all claims and demands due him, the said plaintiff, to take and prosecute all legal proceedings necessary and proper to collect the same, etc.

Defendant then offered to prove that the identical claim involved in this action was presented, duly verified by

J. M. French, on behalf of plaintiff, to the executors of W. C. Ralston (who departed this life on the twenty-seventh day of August, 1875), on the twenty-fifth day of October, 1876, as a claim in favor of plaintiff and against the estate of Ralston; that said claim was rejected by the executors of Ralston, deceased; and that thereafter, and on the twenty-fifth day of January, 1877, an action was instituted in the district court of the fourth judicial district of the state of California in and for the city and county of San Francisco, in the name of and for the plaintiff, against the executors aforesaid, to recover the sum of money claimed in this action, which suit against said executors was then "pending and being prosecuted against the estate of Mr. Ralston, with the knowledge and consent of Mr. Kamm, the plaintiff here."

The testimony was excluded, an exception taken to the ruling, and the action of the court is assigned as error.

The complaint in the action against the Ralston estate was a part of the proffered evidence, and is signed by the same attorneys as appear for plaintiff in this case.

It appears from the complaint in this cause, supported by evidence, that plaintiff remitted certain moneys, which the Bank of California agreed to invest, and did invest, for him, and had collected and appropriated to its own use $20,810, parcel thereof; that the bank was the contracting party with plaintiff, and responsible to him for the money.

In the other action pending, he set up that this money was remitted to and deposited with William C. Ralston, and that Ralston had undertaken to invest for him that money; that Ralston received it, and Ralston agreed to invest it, and Ralston agreed to keep it invested; and that Ralston reported to him, from time to time, of and concerning this money which was invested; and that he had made a request and demand on Ralston to pay him that money, and that Ralston had refused to pay it to him prior to the time of his death, and that it remained

unpaid to him at the time of Ralston's death.   In that suit Kamm avers the facts to be just as defendant in this action claims them to be.

True, plaintiff did not verify the complaint in that cause, but it was verified by his attorney, and we find nothing to indicate that the act was unauthorized; but, on the contrary, proof was offered that the action was being prosecuted with the knowledge and consent of the plaintiff.

Where a suit is brought in the name of and for the benefit of a party by his attorney in fact, thereunto duly authorized, and is being prosecuted with his knowledge and consent, he must be presumed to know these facts and to have assented thereto, and so far as the same is evidence for or against him, to be bound thereby.

Greenleaf, in treating of the subject of admissions, says:—

" So the allegations in the declaration or pleadings in a suit at law have been held receivable in evidence against the party in a subsequent suit between him and a stranger, as his solemn admission of the truth of the facts recited, or of his understanding of the meaning of an instrument; though the judgment could not be made available as an estoppel, unless between the same parties, or others in privity with them." (1 Greenl. Ev., sec. 195; *Parsons* v. *Copeland*, 33 Me. 370; 54 Am. Dec. 628.)

In *McDermott* v. *Day*, 47 Cal. 249, it was held that a joint answer by two defendants, signed by their attorneys, and verified by only one of them, was not admissible in evidence for the purpose of proving the allegations therein contained, in an action brought against the defendant, who did not sign or verify such answer.

To hold a party bound by all the allegations in a pleading which he has not signed, and with which he may not be acquainted, would in many cases work a great hardship.

When, however, an action is brought by or for a party,

and is being prosecuted with his knowledge or consent, the complaint therein is evidence against him of the fact of suit brought and of the nature of the action.

These are special facts dependent upon the general tenor and effect of the pleading, and are independent of many of the formal allegations therein.

To this extent and for this purpose we think the complaint in *Kamm* v. *Ralston* was admissible.

It may well be that the proffered testimony would carry but little weight with a jury, or the court acting as such.

We can well see how a party, being in doubt as to which of two parties is legally liable to him, may bring separate suits against each; but these and other like considerations go to the weight of the testimony when introduced, and not to its admissibility.

We are of opinion the testimony ought to have been admitted, and that its exclusion was error.

Upon the close of plaintiff's testimony, defendant moved for a nonsuit, pending which motion the court permitted plaintiff to amend his complaint so as to more nearly conform to the proofs. This action was in the furtherance of justice, and a proper exercise of the discretionary power of the court.

The demurrer to the fourth amended complaint was properly overruled.

The pleading contained a cause of action, and was not on its face amenable to the charge of being barred by the statute of limitations.

We find no error in the action of the court in refusing to strike out portions of the complaint as amended pending the trial.

It is apparent that through all the numerous amended complaints plaintiff was pressing by somewhat varied statements the same cause of action set out in his original complaint. We are therefore of opinion the plea of the statute of limitations was not well taken.

As a new trial must be had, it can serve no useful purpose for us to enter upon the difficult task of discussing the findings of the court below, or the sufficiency of the evidence to support them.

The judgment and order appealed from are reversed, and a new trial ordered.

McKinstry, J., Temple, J., McFarland, J., and Paterson, J., concurred.

Rehearing denied.