448 P.2d 774

Deb COPENHAVER, Plaintiff-Respondent,

v.

James E. LAVIN, Defendant-Appellant.

No. 10178.

Supreme Court of Idaho.

Dec. 24, 1968.

682

Pat W. Arney, Coeur d'Alene, for appellant.

Thomas A. Mitchell, Coeur d'Alene, for respondent.

McFADDEN, Justice.

Early in February 1965 Richard Maier, as the agent of James E. Lavin, defendant-appellant, discussed with Deb Copenhaver, plaintiff-respondent, the terms of a pasturing agreement for appellant's livestock. It was agreed that the cattle were to be pastured on land Copenhaver held under a lease from a Mrs. Perrault. This land was dry grazing land on which grew bunch grass which was good feed to fatten cattle for market. The written lease agreement Copenhaver had with Mrs. Perrault was for a term ending on June 15, 1965. Maier and Copenhaver agreed that pasturage for the cattle would be at the rate of $4.00 per month per head.

The record is indecisive as to how long this agreement was to continue—only to June 15, as claimed by respondent—or to July 1, as claimed by appellant. Lavin testified it was his understanding that the agreement was to run until July 1, which would allow sufficient time for his cattle to fatten on the bunch grass to the point that they could be sold directly from the pasture, thus saving him the various expenses involved in transporting the cattle to market. The trial court found, however, that the agreement was to terminate "in the middle of June." This finding, based on competent, although conflicting evidence, is binding on this court. Riley v. Larson, 91 Idaho 831, 432 P.2d 775.

In February and March 1965, appellant, acting through Maier, his agent, bought and delivered to the Perrault property a total of 172 head of cattle for respondent to pasture. The cattle remained on this property until early May 1965, at which time Copenhaver was advised by Mrs. Perrault that, contrary to her belief at the time of the execution of her lease agreement with Copenhaver, she did not have control of all the land described in the lease and that Copenhaver would have to remove the cattle from the land. At the time, Copenhaver was pasturing a number of his own cattle, as well as Lavin's cattle, on this property. Copenhaver advised Maier of the problem, who in turn advised Lavin. On May 5, 1965, appellant came to Copenhaver's ranch and the two of them worked together that day and the next to round up Lavin's cattle and move them by truck from the Perrault grazing land to other irrigated grazing land owned by Copenhaver.

Appellant testified that he was dissatisfied with having to move the cattle and did not like respondent's irrigated pasture as well as the Perrault grazing land. He stated that the Copenhaver irrigated pasture, while admittedly good, was primarily composed of broom grass and that his cattle would not fatten thereon as firmly or as quickly as on the Perrault pasture. However, he also testified that he planned to move his cattle from the irrigated pasture as soon as he could find other pasture and therefore consented to the move.

Respondent, on the other hand, testified that appellant agreed to the removal of the cattle from the Perrault land and that they discussed an increased fee of $6.50 per head per month for the use of respondent's irrigated pasture as a substitute for the Perrault land. The record fails to disclose

that there was any firm agreement on this matter, and appellant denies that there was any such discussion.

On May 19, 1965 appellant came to respondent's property for the purpose of completely removing his cattle from the Copenhaver pasture. At that time Copenhaver presented a bill to Lavin for $1,217.30 as the balance due for pasturing the cattle on both the Perrault and Copenhaver properties. This bill reflected that Lavin was charged either $4.00 per month per head for a full month, or 13¢ per head per day when less than a full month, for pasturage on the Perrault property. The bill also showed "14 days @ 16.5¢, 170 head $392.00," which presumably was for the time the cattle were on the Copenhaver irrigated pasture. At the time the bill was presented Copenhaver stated that he would not release the cattle to Lavin until the bill was paid. Lavin gave Copenhaver a post-dated check, which was immediately taken to the bank and payment refused because it was post-dated. Lavin then gave Copenhaver a check currently dated for $1217.30, which was the amount of the bill presented, and the cattle were removed by Lavin.

At trial Lavin stated that it was his opinion that Copenhaver had breached his agreement and that he was not obligated to pay this bill. This opinion was not communicated to Copenhaver at the time the check was given however. After removal of the cattle, Lavin stopped payment on the check.

Respondent instituted this action for payment for the pasturing of appellant's cattle. Appellant, by answer, denied the allegations of respondent's complaint and cross-complained for damages for alleged breach of the agreement. After filing the answer, appellant struck certain specific items of damage from his cross-complaint.

Following trial in the district court, amended findings of fact, conclusions of law and judgment in favor of respondent were entered for $1217.30, which was the amount of the bill for pasture, plus interest. The trial court in its amended judgment dismissed the appellant's cross-complaint.

The rationale of the trial court's holding is contained in the following conclusion of law:

"III

"Plaintiff and defendant, by their conduct on May 19, 1965, mutually terminated the previously existing contract, thereby mutually waiving any breaches thereof and reached an accord and satisfaction as to the sums due, both under the contract for any foreseeable damages as a result of breach."

Appeal was taken from the trial court's order concerning appellant's motion to amend the findings, conclusions and judgment, from the order denying his motion for new trial, and from the amended judgment. Error is assigned to entry of the judgment, to the above quoted conclusion of law, to failure to grant relief under appellant's cross-complaint, and to the failure to grant appellant's motions to amend the findings, conclusions and judgment, or to grant a new trial.

Basically all of the assignments of error deal with the same issue, i. e. whether there was a discharge of the agreement to pasture appellant's cattle. Appellant first asserts that respondent's defense of accord and satisfaction to appellant's counterclaim was not pleaded and that, in any event, the elements of that defense are not present in the case at bar.

It is recognized that the defense of accord and satisfaction is an affirmative defense which should be pleaded unless failure to do so is waived, by failure to object to evidence in support thereof. I.R.C.P. 8(c). Stone v. Webster, 65 Idaho 392, 144 P.2d 466 (1943); Nordling v. Whelchel Mines Co., 90 Idaho 213, 409 P.2d 398 (1965). I.R.C.P. 15(b) states in part "When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In Nordling v. Whelchel Mines Co., supra,

this court applied I.R.C.P. 15(b) to the facts there presented and the court determined that facts admitted into evidence without objection were sufficient to establish an accord and satisfaction or a compromise and settlement, although the defenses had not been pleaded.

In this case evidence pertaining to the notice given to appellant's agent as to the necessity of removing the cattle from the Perrault place was admitted without objection. Moreover, no objection was raised to the introduction of evidence as to moving the cattle from the Perrault place to respondent's pasture. Furthermore, there was no objection as to the evidence concerning delivery by appellant of the two checks—the first post-dated and refused, and the second correctly dated, but upon which payment was stopped.

In Jensen v. Chandler, 77 Idaho 303, 291 P.2d 1116 (1955), this court stated:

"A contract may be discharged by conduct as well as by words. 12 Am.Jur., Contracts, 1011, Sec. 431. An abandonment of a contract by consent may be implied from acts of the parties. (citing cases)

"A rescission by consent is implied by refusal of one party to comply with the contract in which refusal the other party has acquiesced. (citing cases)

"A contract will be treated as abandoned where the acts of one party inconsistent with its existence acquiesced in by the other party. (citing cases)

"It is generally held that it is a question of ultimate fact as to whether a contract has been abandoned or mutually rescinded". 77 Idaho at 307, 291 P.2d at 1118.

The facts fully sustain the trial court's ultimate conclusion that the parties " * * * by their conduct on May 19, 1965, mutually terminated the previously existing contract, * * *." Appellant assisted in removing his cattle from the Perrault property to respondent's irrigated grazing land. The record fails to disclose any objection to

this change in performance of the agreement. Appellant, prior to the claimed termination date of the agreement, desired to remove his cattle from respondent's premises and proceeded to move them. In order to comply with respondent's demand that respondent would not release the cattle without being paid, appellant gave respondent his check. This check was given without reservation, appellant making no claims under the agreement. The check was given in the amount set forth in the statement of account that respondent claimed due. On the strength of this check, respondent released possession of the cattle, and waived any lien rights accruing under the provisions of I.C. § 45–805.

Appellant asserts that the evidence is insufficient to find an accord and satisfaction as stated in the trial court's conclusion of law. As to whether there was evidence to sustain all elements for accord and satisfaction as a defense is immaterial to this opinion, it being concluded that the trial court was justified in determining that there was a mutual termination of the agreement.

Judgment affirmed. Costs to respondent.

SMITH, C. J., and TAYLOR, McQUADE and SPEAR, JJ., concur.